Chief Justice Robertson,
delivered the opinion of the court.
This writ of error is prosecuted to reverse a decree sustaining a demurrer, to a bill in chancery for freedom. Two points only will be considered.
1st. Do the allegations of the bill shew that the plaintiff in error is a free man?
2d. If the plaintiff be free, will a bill in chancery lie to establish and secure his rights?
The hill attempts to deduce the freedom of the plaintiff from various sources. But we deem it necessary only to examine a deed of emancipation which liberated the plaintiff’s mother, thinking, as we do, that the plaintiff’s freedom resulted as a necessary consequence from the operation of that deed, which isas follows:
*332 “Upon the principle of love, justice, mercy and truth, and in obedience to the command of the creator of all things, who commanded us to do unto all as we would they should do unto us, and to break every yoke and let the oppressed go free, and agreeable to the bill of rights, by which opposed the power of Britain; I do, by these presents, renounce all claim tp any power over man, be him white or black; and I do, upon the house top confess my sins, and hope that God, for Christ’s sake, will pardon me for what is past; and yet I now freely, and immediately, liberate and quit claim to a negro man named John; and a negro woman named Lucy, his wife, and a negro man named Bromley, as also a negro girl named Su-sannah now ten years old, to go free at the expiration of eight years from tins date, as also a negro girl named Rachel, now eight years old, to go free at the expiration of ten years from this date.
“In witness whereof, I have hereunto affixed my hand and seal this 29th day of September, 1794.
.JOHN WATSON,” [seal.]
On the day of its date, the deed was acknowledged and ordered to be recorded in the court of the county in Virginia, in which the grantor resided, and was so recorded. The plaintiff is the son of Susan-nah, and was born about seven years after the date of the deed. It is necessary, therefore, only to decide whether Susannah was a free woman when she bore the plaintiff. And we feel satisfied that her freedom immediately succeeded and resulted from the acknowledgement and registration of the deed of emancipation; eo instanti, John and his wife and Brom-ley were certainly free; “I freely and immediately emancipate” applies as effectually and as certainly to Susannah as to John, according to the literal and grammatical import of the entire sentence. If all the slaves were not emancipated at the same instant the language employed by the grantor was inappropriate; and all the parts of the deed will not har-monise or have full effect, but the instrument, as a whole, must be disjointed and distorted.
It is manifest that the grantor intended to renounce, at once, all his title and claim to the grantees as slaves. The liberal tone and emphatic language of *333 bis deed evinced a fixed determination on his part, never again to exercise or claim dominion, as proprietor over any human beingas a slave. To suppose that Susannah continued to be a slave until she eighteen years old, and that her son is yet a slave, would be inconsistent with the language, and irreconcilable with the declared intention of the grantor. He intended never to own a slave after (he acknowledgment of his deed of emancipation. All his slaves were liberated at the same instant, and by I he same act. But as Susannah and Rachel were infants, the grantor considered it proper to retain them in a state of pupilage, until their maturity. He emancipated them, but postponed the enjoyment of perfect liberty until they should be qualified for self control, and self preservation. In the mean time they were servants, but not slaves. They remained in servitude, but not in slavery.
A suit in maintainable.
Bibb, for plaintiff; Richardson, Monroe and D. W• Wilson, for defendants.
They were actually free persons, but were not to “go /ree;M that is, go forth \n\o the world, until they should acquire sufficient experience and discretion to enable them to enjoy the blessings of freedom. This temporary servitude and restraint were designed for the advantage of the beneficiaries, rather than for that of the benefactor.
Looking at the deed alone, as we must now do, we are clearly of opinion, that Susannah was a free woman when the plaintiff was born; and that he.consequently, is a free-man.
2d. We have heretofore decided that a suit in chancery may be mantained for freedom; and we percieve no reason for deciding otherwise now.
Wherefore, it is decreed and ordered, that the decree of the circuit court be reversed, and the cause remanded with instructions to overrule the demurrer.